Good afternoon, Your Honors. Jenny Tsai on behalf of Petitioner. Your Honors, under legalization, an alien that meets the eligibility requirements under legalization Are you going to be able to speak louder? Yes, Your Honors. Is that better? Granting a legalization is mandatory if the alien meets all the requirements of legalization and the Immigration Services does not have the discretion to grant or deny the legalization application as long as the alien qualifies. So this petitioner in this case would ask this court to remand this case back to the LAU and instruct the LAU. There are two issues you need to address. One is the jurisdiction of this court, which we asked you to address. And the second difficult issue, it seems to me, is the fact that the temporary status was denied in an appeal by a determination that the appeal was not timely. And what is the status of that issue as we look at the case now? Yes, Your Honor. Under jurisdiction, the former section 106 of the INA permits that there would be judicial review under order of exclusion or deportation. And although that section is repealed under IRA-IRA, under INA section 242 allows judicial review for legalization applications that are denied. And in this case, neither the IJA nor the BIA has jurisdiction. Therefore, we are here today under judicial review. As well as under the case of Proieto v. INS, where the court ruled that the practices and procedures of the INS should be heard in the district court, whereas the application and interpretation of the immigration laws should lie in judicial review. But the question is what the IRA-IRA amendment means when it says as an effect as of October, whatever it was. And particularly, as I understand it, our law at the time, or under the former statute, was that we could review legalization decisions where there was a deportation proceeding, but not where there was an exclusion proceeding, right? That is correct, Your Honor. So how does that carry over under the current statute? And how do we know which one this is? Okay. Your Honor, as of April 1st of 1997, with the enactment of IRA-IRA, all hearings, exclusion, or deportation are under one unitary proceeding. That is, removal proceedings. Right. So in other words, you think that now the law is that even if it would have been an exclusion proceeding before, it still can be heard, the legalization hearing issue can now be heard in an exclusion proceeding, but would have been an exclusion proceeding even though it couldn't before the statute? That is correct, Your Honor. It doesn't matter now whether this would have been an exclusion proceeding or whether it would have been a deportation proceeding? In the context of legalization, that is correct. So IRA-IRA was expanding the basis on which you could have review of legalization proceedings from what it was before. That just seems improbable. No, I don't believe that was an expansion. IRA-IRA stripped judicial review from a lot of cases, such as cancellation cases, and Section 242 of the INA merely preserves judicial review for legalization applications. But let me go back again. Before IRA-IRA, was it not true that for legalization cases you can get review if you are deported but not if you are excluded? Is that right? Before IRA-IRA? That is correct, Your Honor. How does that carry over after IRA-IRA? It carries over after IRA-IRA because after IRA-IRA, all hearings, exclusion or deportation, is now combined into one unitary proceeding. Therefore, if this was we don't know at this point whether this was exclusion or deportation, would have been originally. Do we know that? We know that by the fact that the notice to appear was issued in 1999. The charging document, the notice to appear, if it was issued after April 1st of 1997. I understand that it was a removal proceeding, but we don't know what would have been before. So you are, therefore, relying on the notion that there was at least a minor expansion of reviewability because now whether he would have been excluded or whether he would have been deported, in either case, he can now, because it's a unitary proceeding, now get review of his legalization. That is correct. His rights have not changed. It has changed. Therefore, it has changed. What has changed is that someone who earlier would have not been able to get review because he was excluded, not deported, now can. Under removal proceedings, that is correct. All right. So there has been an expansion. Yes, Your Honor. In this case, do we know whether it would have been exclusion or deportation under the prior law? Yes, Your Honor. It would have been exclusion since this alien was never admitted into the United States. He just had the temporary admission. That is correct. Temporary residency status. Okay. Thank you. Thank you. With regards to the temporary status denial, that was untimely, Your Honors. The petitioner did file a timely appeal of the termination of the temporary resident status, and that application was accepted by the LAU, and the content of that appeal was used against him. However, at the same time, the LAU deemed the appeal to be untimely. But the problem here, I guess, that at least is of some concern to us, is that there was an order entered denying his status as denying his permanent residence application because there was a denial of his or refusal to continue his temporary status, and that was not the case. And the reason for that was that he didn't timely appeal. And nowhere in your papers do you address that issue on appeal. Yes, Your Honor. That is because under legalization, this one single relief is divided into two stages, and one is that the person will qualify and be granted temporary resident status first, and then adjust status a few months later. But the criteria for both would be identical. And in this case, the petitioner did not suffer any new offenses that would disqualify him for temporary resident status. So if this court was to find that the petitioner qualifies to adjust status because of his criminal record, then logically, the temporary resident status should not have been terminated because the petitioner had the same criminal offense. Except it was terminated, except that you made that argument on appeal, and they said you were late. Now, I find it hard to believe you were late because you did file on time, except with the wrong kind of payment. But nonetheless, there was a ruling that you were late, and there was a ruling, therefore, with regard to the permanent resident status, that that was an alternative reason for denying the permanent status. And you've never made an argument anywhere that I could find or have you regarding that issue. And that is because, Your Honor, we believe that the requirements for both temporary resident status and for adjustment of status to a permanent resident are identical. So are you saying, let me see if I can, does it matter for permanent, is there a circumstance in which you could have your temporary status terminated, but nonetheless have a successful permanent residence termination, permanent legalization termination? No, Your Honor. In order to adjust status to a permanent residency, you still have to have the temporary residency status. So if his temporary residence was properly terminated, or was terminated, finally terminated, was terminated, then you still have to have permanent residency status. And if it's not properly, whether properly or improperly, then why isn't that just positive? I'm just having a hard time understanding this. I understand, Your Honor. If a person wants to adjust status under legalization, they cannot have three or more criminal offenses that would disqualify them. I'm not talking about the offenses. I understand about the offenses, and I'm frankly persuaded by your showing that he doesn't have them. All right? What I'm trying to understand is how this decision that there was a late appeal, and therefore his temporary status terminated, doesn't dispose of your legalization argument. Well, we also believe that the temporary resident appeal was timely. Well, we can agree with that, counsel, but you didn't appeal from the holding that it was not timely. That is correct, Your Honor. That is because in the administrative record that we received for the opening brief, we did not have the information on temporary resident status. All right. So now we're getting someplace. Now, why not? Why didn't you have? It wasn't in the administrative record that we had to base it for the opening brief, unfortunately. So we addressed the adjustment of status, and... Did you file a reply brief? The reply? You did file a reply brief? Yes, we did. And did you discuss it then? Your Honor, my partner, Roger Green, can address this issue at this time, if that's okay. I'm close to out of time, but I'm going to let the time go ahead, so why don't we do that? Okay. Go ahead. Roger, take a couple minutes to do that, please. Thank you, Your Honor. Roger Green before the Court. In discussing the issue of the termination of the lawful temporary status, what our position had been was that they are both the lawful permanent residence denial and the temporary residence termination are part of encapsulated within the same issue. If it's viewed as the issue is how many convictions does he have and how are the convictions viewed, we're in a position where it's the same basis. If the Court does find that the AAU had acted unfairly in their decision, then not only would he be granted, afforded the ability to have lawful permanent residence status, but the basis for the temporary residence status is also the same basis. But isn't there still a procedural problem, which is that you let the temporary status lapse? The temporary status was determined to be terminated, and that was an alternative reason for denying the permanent status, as well as the issue about the convictions, right? That's the case, Your Honor. I thought you were going to tell us more about what wasn't in the administrative record and why, therefore, you didn't argue it. Oh. His petitioner's prior counsel had, we had received, with the record we received, we did go on the first issue, the lawful permanent residence basis, and then in our letter brief we did address the basis for why the temporary residence status should still be preserved in the sense of the equitable tolling issue. Exactly what was in the administrative record. You do not have the order which based its denial partly on the untimeliness? That letter we did receive, Your Honor. Pardon? That letter we did receive in the first set of administrative record. What we did not receive was the correspondence between petitioner's prior counsel in terms of trying to do a motion to reopen the case based upon the equitable tolling sorts of issues in that sense, and the issue had not been raised with the IJ or the BIA at that juncture by the time he got to your court. But was the motion to reconsider, again, still on the merits with regard to all these issues about the showing what the convictions were actually for? Was there ever a motion to reopen or to reconsider with regard to the timeliness of the appeal? There was, and the prior counsel did address that she had made an effort to send in the documents, but they were sent back with a notation to send it in to proper form. Is the current record complete, what we now have? I believe so, Your Honor. But it was amended at some point? It was. We were given part of the administrative record when we first filed this action, and then later after the governments, motion, at the time of the governments brief, we received the rest of the administrative record at around that time. Let me just ask you, where do you think we would be jurisdictionally had the petitioner never applied for an adjustment of status? Let's assume he never did that, and that he had his temporary status. And then, for some reason, the service started removal proceedings based upon what he claimed to have been his conviction. Would this case be in the same posture as it is now, or does the fact that he applied for an adjustment of status and was denied that adjustment, and whether he failed to appeal or not, is a separate issue? But the fact that he applied for adjustment of status and was denied that, what difference does that make for jurisdictional purposes in this removal proceeding? I believe, as co-counsel has also mentioned, that he would be in the same situation, Your Honor, jurisdictionally. He would be along the same road, whether or not he had been served with an order to show cause, or whether or not he had been served with an NTA. His eligibility to have his case reviewed by an IJ would be precluded, if he had been put in under an OSC, in the same manner that he would also be precluded from IJ or BIA relief when he was placed in removal proceedings. And I'm not saying that he would have been put in removal proceedings when the NTA was filed against him. I'm really confused now. I thought he wasn't – your argument is he's not precluded from review in any event. Oh, no, in terms of the immigration judge. I see. Administrative review for the immigration judge and the BIA. Okay. And the only – Do you agree that he would have – I'm still having difficulty with this jurisdictional problem, to go back a moment. Would he have been put in an exclusion proceeding, not a deportation proceeding? I believe – I agree with co-counsel in that he would have been put into exclusion proceedings. So how can we now have jurisdiction when we wouldn't have had jurisdiction before 1996, when the statute says as of October 30th, 1996? I'm sorry, Your Honor. The temporary permanent resident status, assuming that his temporary permanent resident status gave him that status at that time, if I can just backtrack, he would have been put into deportation because he did have the status, some status, some admission status, which would have allowed this Court to hear the case. Pre-1996. Pre-1996, Your Honor. But he wasn't given temporary resident status. He was. And that's – He was not given temporary resident status. Originally he was. Originally he was, but then it was terminated, right? It was terminated. Oh. In 1995. Uh-huh. Well, let's hear it from the government. Okay. Thank you very much. Thank you, Your Honor. We'll give you one or two minutes, then we'll vote on it. Good afternoon, Your Honor. Good afternoon, Your Honors. John Hogan for the government. May it please the Court. I think the first question, I disagree slightly with what the opposing counsel has argued, and I think it might clear up the jurisdictional issue in this case. I think both parties agree there's jurisdiction to review the denial by the legalization appeal unit. The Court's question seems to be about its precedent holding in Espinoza-Gutierrez, where it said if it's an exclusion hearing, we're not going to have review of that legalization appeal denial. Right. I don't agree that this would have been, under the old law, an exclusion case for one, I think, basic reason. The notice to appeal, notice of, notice to appear in this case, which is at page 91 of the record, he was charged under section 237 of the Immigration and Nationality Act, which is 8 U.S.C. section 1227. Deportation, per se. And that's deportation. If he was, under the old rules, excludable, he would have been charged under section 212 of the Immigration and Nationality Act. Right. So I think we don't have to get into the conundrum of, boy, is this really going to conflict with Espinoza-Gutierrez, that if this person was somehow given an order to show cause years ago, would he have been in exclusion versus deportation? I think it's – Because, in fact, this was charged as a deportation proceedings. Exactly, Your Honor. So I think that's why the Fourth Circuit's holding, recent holding last in, say it wrong, Fourth Circuit didn't deal with this problem, though, that's why. Exactly. Exactly, Your Honor. They didn't quite address it. And I don't know if we have to go in this case, at least, to figure out whether the hypothetical of someone that was denied legalization in 1992 and the government did not put them into proceedings until 2004, would they be getting review today, whereas if they'd been put into proceedings right away, they would have been in exclusion. Do you have an opinion on that? I do. Even though it's not this case, Your Honor, I understand you want the question answered. I would say this. I don't think it's unclear whether Congress wanted more review for someone just because they were put into proceedings later, if they were still excludable. So I think we, at least for this case, because the Petitioner is deportable, we don't have to get to that question simply because of what he was charged with. Can we go to the jurisdictional? I mean, the jurisdictional section, this very odd language, which says, there shall be judicial review of such a denial only in the order of the judicial review of an order of deportation under Section 1105 of this title as in effect before October 1, 1996. Now, it's really almost impossible to understand what that means. It is. Because on the one hand, if there isn't anything under in effect, Section 1105 doesn't exist now. It says things, for example, like you have 90 days to file a petition for review, while you now have 30 days to file a petition for review. It surely didn't mean that these people now have 90 days to file a petition for review, whereas otherwise they would have 30 days to file a petition for review. Exactly. That's why it is unclear. I think because the original statute didn't say you only have review in deportation, not exclusion. It just said deportation, and the courts had to interpret whether exclusion applied or not. I'm not getting off the exclusion. I think you've satisfied that. But more than that, what does this whole provision mean? Does it mean, for example, this person was in fact removed presumably the proceedings were not conducted under 1105 as it appeared then. They were conducted under what, 1252 as it now exists? Right, Your Honor. Procedurally in terms of how much time he had to file. What about the jurisdiction stripping in the new statute? Does it apply or doesn't it apply? What if he turned out to be an aggravated felon and he could have had review earlier, but he can't have review now? I think the government argued those bars would apply. Well, that can't be. Then you're trying to have us partly operate under 1105A as it was before and partly not. I guess you want us to walk around the problem in this case. I think, Your Honor, the simple answer is you have jurisdiction to review the denial. Okay. And that gets to the subsequent questions the court was asking. And as the court noted, that it was not raised in the briefs about the untimely filing of the appeal of the temporary resident status, which I think is the crux of the case because if we do away with that, you can't be a permanent resident if you weren't temporary. But he was temporary for a while. Weren't these two opinions issued in the same day or something? Yes, Your Honor. I think two or three days apart. So was there ever actually a period of time when his temporary residence was terminated when he was not a temporary resident finally before the other decision was made? I think it looks like for a period of about three days, Your Honor, between the two different LAU decisions. One, on April the 24th of 1995, the LAU dismissed the appeal of the temporary resident claim, and that's at the supplemental appendix record at pages 45 and 46. Counsel, there are situations under which we will find equitable tolling. Is this such a case? I don't think so, Your Honor, for a couple reasons. In this case, as we argued in our letter brief, it was clear that when he was initially denied temporary status, he was told to file without a personal check within 30 days. On day 28, the government received, the LAU received that appeal. Do you know any other court that would consider something unfiled, which was filed because the form of the payment was incorrect? I can tell you this court doesn't do it. The Supreme Court doesn't do it. And it appears that the legalization office didn't do it either with regard to the permanent residence question. I think, Your Honor, the question is if, you know, within two days of receiving that, they informed him that he was due. Well, they informed him on the 30th, which was the last day, so no way. And I think they could have informed earlier if they had received it earlier. But, I mean, they informed him almost immediately after realizing what he was warned when he was initially denied. But he wasn't warned. He was not warned that if you don't file the right form of payment, we're going to consider that you would have to have filed this piece of paper that you, in fact, did send in a file. He's warned in the denial about what the requirements were. Right. But he wasn't warned that it was considered not to have filed it if the form of payment was incorrect. Well, even after, and I look, I can get the record to look at the exact verbiage of when they returned on December 30th and told him you need to file a money order like you were told. And he did. It arrived a week later. Unfortunately, Your Honor, it's still not within the 30 days. Because he wasn't told it in time. Your Honor, I think that still gets besides the point of if he had applied earlier, there might have been more time to correct it. He corrected the error within a couple of days, but still not within that 30-day deadline. And that's why I don't think the tolling issue applies in this case. One, not raised. I know the Court has asked to address that in the letter briefs. But I think because it's clear in this case about the timelines involved, that's why it was, tolling should not apply. And even if it wasn't an issue raised before the Court. So I believe it's been waived. Now, this was a check signed by the lawyer? Correct, Your Honor. I can look at the record. I believe it was a personal check of. It was a personal check, but I think it was the lawyer's, was it not? I'll have to. My recollection is the Petitioner himself, Your Honor, but I'll have to look to make sure of that. Do you want to address the other merits questions having to do with the convictions or are you now satisfied that there, in fact, were only those two convictions? I think, Your Honor, if you get to the merits of the original temporary resident status, what the LAU said at the time was, look, we've got one. You've got these other two. We don't really know what's going on here. It's your burden to show it to us. And he didn't do that. Well, he brought in every conceivable record that was available, did he not? I think that was later on, Your Honor, when the eventual denial by the, of the permanent status application. But what's clear, and this is, again, Your Honor, is that supplemental appendix record, page 48. That's probably the clearest, trying to figure out what all these different convictions and violations are. It goes through, and what's clear is that the ones that the original termination relied on when they said we've got these violations actually turned out to be convictions later on. And there's just a couple different pages. The pages 72 and 63 of the supplemental appendix record, those talks, those pages talk about the convictions. So I think even if we get past the untimeliness part of it, the merits question turns out you almost have to look at the two different LAU opinions that make sense and then look at both of the letter briefs to figure out what the actual violation convictions are, that one, he had a burden to show what exactly was going on. And the LAU said we've given you some time. You didn't meet your burden to help us out here. You put down on your permanent resident application that you failed to, you were not driving without a license. Now show it to us what's happened with that. And he failed to do that. Well, actually, there was no contradiction there at all because there, my understanding of what happened was that he was, the question was were you arrested, convicted or confined since becoming a temporary resident alien. The answer to that question was no driver's license. It was true because he was actually confined after, for ten days as I understand it, after the application, but the conviction was before. So there was no contradiction there. There was one conviction. And there was nothing confusing about it. Respectfully, Your Honor, I think we disagree about how those different violations convictions were portrayed as to they gave him a notice as to please help us out here as to what's really going on with this. And that wasn't ever clear. So they said based on that, that's reason to deny. And even if, go back to the original finding of you're no longer a temporary resident, you can't become a permanent resident, which is the issue we've raised has been waived in this Court. But the assumption of the analysis is that it couldn't have been the same as the July 24th, 1991 conviction, even though he said it was. And that's wrong. It could have been the same. In fact, it was the same. Because the question wasn't whether he was convicted. It was whether he was convicted, arrested or confined. And I think, Your Honor, the original, and again, Your Honor, this is a page 82 of the supplemental appendix. It talks about the three different violations and convictions they're relying on. And then when you look. Those weren't even convictions. They were arrests. I didn't understand that part either. It says conviction date. And then it notes two arrests. And then it concludes that those were convictions. But they never, he had no record that they were convictions. The April 27th, 1995 LOU denial, Your Honor, talks about those in more detail. And what they rely on is, and this is, he keeps sliding records, pages of the record. But page 20 of the record and 72 of the supplemental appendix record is the actual violations they relied on. That initial denial turned out from the AAU's subsequent findings to be convictions themselves. They might have been later expunged, but they were still convictions. At the time, they thought they were just violations. They asked for some more. They didn't get it. Now, later on, when the LOU looked at it, it's clear from pages 72 and 63 of the supplemental record that they are, in fact, convictions. And they've relied on it. It's just not clear from the very first decision from temporary status. If they've been expunged, do they still count? Yes. That's a short answer, I think, Your Honor, because there's no indication that some kind of due process or constitutional violation was the reason they were expunged. I think just as we, in looking at aggravated felon jurisdiction bar cases, expungement usually will not stop the fact that it's still a conviction for immigration purposes. So I don't think in this case we have a scenario where any kind of ---- What's your authority for that? I know the case is Espinoza, Your Honor. I have to get you ---- I know that that's true for other purposes, but the question is, is it true, was it true under the legalization program? I don't know. It's very straightforward. I don't think it's ever been specifically addressed about an expungement with that. It's extrapolating from one to the other. I didn't find anything. Neither have I, Your Honor. I didn't know a very simple case could be this complicated. The petitioner suggests that the driving without a license is a single event, and that in his statement he was referring to the early occasion when he was cited or arrested for that. Now, the Department of Motor Vehicles record was provided, was it not? It was, Your Honor. In one of these proceedings. Does it show more than one conviction or arrest for driving without a license? Do you remember? I don't, Your Honor. I'm trying to think. I think it talks about one, but it was before he was a temporary permanent resident, and that's what the government relied on to show that there had to be another one, because he checked the box that he was convicted after temporary resident. No, he didn't. He checked the box that he was convicted, arrested, or confined. Unless I'm mistaken, Your Honor, I thought the box asked for ---- My understanding is that it said convicted, arrested, or confined. And he was confined, but he wasn't for the earlier conviction. The earlier conviction was the hit and run. Is that correct? Yes, Your Honor. And then there was the driving without a license. And that's all that I could see, except he didn't appear and pay his fine or something. Your Honor, we cited on page 9 and 10 of our letter brief the convictions. And, again, the LAU Legalization Appeal Unit decision of April 27, 1995, really spells out in the most detail dates of violations and the result of all these different offenses. And that's what I was trying to make not very artfully earlier, that the original denial of temporary, verification of the temporary status where they thought there were violations, realized that they were, in fact, convictions, perhaps expunged, but still convictions. But what I'm getting at here is that he contends that he did the best he could to cooperate. And he, in effect, is telling us that he's being asked to look for a record that does not exist, that never did exist. And he's being faulted for not producing a record that he claims never existed. Now, the Department of Motor Vehicles, by its exhibit, is saying there was only one occasion when he was cited for driving without a license. Does that not suggest that he is correct, that there is no other record? That's the point I'm trying to get cleared up for myself. And the Department of Motor Vehicles record, as I understand it, shows only one such occasion for driving without a license. And if I'm wrong, I'd like for you to tell me. Your Honor, I thought I made the point that Judge Fletcher, I think, corrected me. I thought that the box that he checked said it was a conviction after temporary resident status, and that's what the government or the LAU relied on to show that there must have been more than one and asked them to please give us some more documents. And you do that in spite of the Department of Motor Vehicles records. Am I right? Yes, Your Honor, based on the application filed by the petitioner in this case. Okay. Do you know when that application is in the record? Your Honor, I looked at it all day today. Now I'm having trouble finding the record. I don't know either. I just wanted to check my belief that it wasn't really a question. But I can't do it right now. That's okay. Roboto, I can find that for you, Your Honor. Okay. Is there anything else you want to add? No, nothing more, Your Honor. Okay. Thank you very much. Thank you. We'll give you a minute or two in Roboto if you wish. Your Honors, in arguing that the issue of the temporary residency termination being waived before the score, Your Honor, the respondent relies on the cases of Paracore and Collins. In those cases, the parties had stipulated to waiving an issue that was a central point in that case. In this case, we believe that the temporary residency status and the adjustment of status to permanent residence is of one relief that should be addressed together and not as two separate relief. Your Honors, and with regards to the petitioner's criminal record, I believe that the petitioner, rather the respondent, is relying on the service's own denial letter in determining what criminal convictions this petitioner has. Upon examining the administrative records closer, one will see that this petitioner only suffered a hit and run in 1984 and a couple more offenses that were expunged. So we believe that... Do you know the answer to whether the expunged ones count? I'm sorry? Do you know the answer to whether the expunged convictions count? Your Honor, under Lujan Armideris, post-April 1st, 1997, the expungements will be completely meaningless for immigration purposes. However, this petitioner had these offenses expunged prior to the enactment, therefore, the expungement should be honored for immigration purposes. Okay. Thank you very much. Thank you. Thank you for your arguments. Yes? That was page 128 of the record, I think, is what you're looking for, the supplemental record. Which was it? Page 128 of the supplemental appendix record is the application. Yes. And it does say that I have not been arrested, convicted, or confined in a prison, and he wrote no driver's license. And that's what he said. Since becoming a temporary resident, right? I'm sorry? It says since becoming a temporary resident. Right. Right. So he was confined. It isn't necessary that there have been two convictions. That was all made no sense. There could have been one conviction, and there was one conviction. Okay. Thanks. Thank you very much. The case of Guzman-Andrade v. Ashcroft is submitted, and we proceed to the next case in the calendar, which is Kastnikovich. And you can tell me whether I am pronouncing that correctly, versus Ashcroft. Thank you.
judges: B. Fletcher, Leavy, Berzon